Colorado Supreme Court Opinions || June 29, 2015


Colorado Supreme Court -- June 29, 2015
2015 CO 52. No. 13SA135. Concerning the Office of the State EngineerÃ¢ÂÂs Approval of the Plan of Water Management for the Special Improvement District No. 1 of the Rio Grande Water Conservation District, and Concerning the Special Improvement District No. 1 of the Rio Grande Water Conservation DistrictÃ¢ÂÂs Approval of the Plan of Water Management for the Special Improvement District No. 1 of the Rio Grande Water Conservation District: San Antonio, Los Pinos, and Conejos River Acequia Preservation Association v. Special Improvement District No. 1.



 
 Â The Supreme Court of the State of Colorado 
 2 East 14th Avenue â¢ Denver, Colorado 80203
 
 
 2015 CO 52
 
 
 Supreme Court Case No. 13SA135 
 Appeal from the District Court 
 Alamosa County District Court, Water Division 3, Case Nos. 06CV64 & 07CW52
 Honorable Pattie P. Swift, Water Judge
 
 
 Concerning the Office of the State Engineerâs Approval of the Plan of Water Management
 for the Special Improvement District No. 1 of the Rio Grande Water Conservation District
 
 and
 
 Concerning the Special Improvement District No. 1 of the Rio Grande Water Conservation
 Districtâs Approval of the Plan of Water Management for the Special Improvement District
 No. 1 of the Rio Grande Water Conservation District
 
 Objectors-Appellants:
 San Antonio, Los Pinos and Conejos River Acequia Preservation Association; Save Our
 Senior Water Rights, LLC; Richard H. Ramstetter; and Costilla Ditch Company,
 
 v.
 
 Applicant-Appellee: 
 Special Improvement District No. 1 of the Rio Grande Water Conservation District,
 
 and
 Defendant-Appellee: 
 Dick Wolfe, P.E., State Engineer,
 
 and
 Objectors-Appellees:
 
 Rio Grande Water Conservation District; Rio Grande Water Users Association; Conejos
 Water Conservancy District; Farming Technology Corporation; Mountain Coast
 Enterprises, LLC; Ernest Myers; Freda Myers; Virginia Myers; Warren Myers; Nevitt Farms;
 Sam Investments, Inc.; Skyview Cooling Company, Inc.; Waijaya Colorado, LLC; Edward
 Harmon; Sherilyn R. Harmon; David Bradley; Perry Alsbaugh; Martin Shellabarger; Kelly
 Sowards; Richard L. Benton; Jason L. Benton; Thomas C. Corzine; Clayton C. Corzine; Roy
 McConnel, Jr.; Fredrick V. Paulson; Fredrick L. Paulson, II; Norman W. Slade; Off Ranches,
 Inc.; Cristi Lewis; Robert Atkins; Mario Bassi; Obbie Dickey; N.W. Ellithorpe; Kari King;
 Laurie Lovato; Timothy Lovato; Laurie McClung; Ed Nielson; Janis Slade; and C.R. Tomlin,


 and

 Appellee Pursuant to C.A.R. 1(e):
 Craig Cotten, Division Engineer, Water Division No. 3.


 
 Judgment Affirmed 
 
 en banc
 June 29, 2015
 
 
 Attorneys for Objectors-Appellants San Antonio, Los Pinos and Conejos River Acequia Preservation Association and Save Our Senior Water Rights, LLC: 
 Buchanan and Sperling, P.C.
 Timothy R. Buchanan
 
 Arvada, Colorado
 
 Attorneys for Objector-Appellant Richard H. Ramstetter:
 S.W. Atencio and Associates, P.C.
 Stephane W. Atencio
 
 Alamosa, Colorado
 
 Attorneys for Objector-Appellant Costilla Ditch Company:
 Lester, Sigmond, Rooney & Schwiesow
 Erich Schwiesow
 
 Alamosa, Colorado
 
 Attorneys for Applicant-Appellee Special Improvement District No. 1 of the Rio Grande Water Conservation District and for Objector-Appellee Rio Grande Water Conservation District:
 Hill & Robbins, P.C.
 David W. Robbins
 Dennis M. Montgomery
 Peter J. Ampe
 Andrew J. Rottman
 
 Denver, Colorado
 
 Attorneys for Defendant-Appellee State Engineer and Appellee Pursuant to C.A.R. 1(e) Division Engineer, Water Division No. 3:
 Cynthia H. Coffman, Attorney General
 Preston V. Hartman, Assistant Attorney General
 Mari Deminski, Assistant Attorney General
 
 Denver, Colorado
 
 Attorneys for Objector-Appellee Rio Grande Water Users Association: 
 Carlson, Hammond & Paddock, L.L.C.
 William A. Paddock
 Mary M. Hammond
 Karl D. Ohlsen


 
 Denver, Colorado
 
 No appearance on behalf of: Conejos Water Conservancy District; Farming Technology Corporation; Mountain Coast Enterprises, LLC; Ernest Myers; Freda Myers; Virginia Myers; Warren Myers; Nevitt Farms; Sam Investments, Inc.; Skyview Cooling Company, Inc.; Waijaya Colorado, LLC; Edward Harmon; Sherilyn R. Harmon; David Bradley; Perry Alsbaugh; Martin Shellabarger; Kelly Sowards; Richard L. Benton; Jason L. Benton; Thomas C. Corzine; Clayton C. Corzine; Roy McConnel, Jr.; Fredrick V. Paulson; Fredrick L. Paulson, II; Norman W. Slade; Off Ranches, Inc.; Cristi Lewis; Robert Atkins; Mario Bassi; Obbie Dickey; N.W. Ellithorpe; Kari King; Laurie Lovato; Timothy Lovato; Laurie McClung; Ed Nielson; Janis Slade; and C.R. Tomlin.Â 


 
 JUSTICE MÃRQUEZ delivered the Opinion of the Court.
 Â 


 
 Â¶1Â Â Â Â Â Â  This is an appeal from two pretrial orders and the April 2013 judgment and decree of the District Court for Water Division No. 3 in Case Nos. 06CV64 and 07CW52. Collectively, the water courtâs rulings upheld the Special Improvement District No. 1 (âSubdistrictâ) of the Rio Grande Water Conservation Districtâs (âDistrictâ) and the State Engineerâs approval of the 2012 Annual Replacement Plan (âARPâ) developed pursuant to the Subdistrictâs decreed Plan of Water Management (âAmended Planâ). In San Antonio, Los Pinos & Conejos River Acequia Preservation Association v. Special Improvement District No. 1 (âSan Antonioâ), 270 P.3d 927, 931â32 (Colo. 2011), this court affirmed the water courtâs May 2010 Decree that approved the Subdistrictâs Amended Plan and imposed additional decree conditions on that Plan. The 2012 ARP under review here is the first ARP prepared pursuant to the Subdistrictâs Amended Plan.
 
 Â¶2Â Â Â Â Â Â  The Amended Plan represents the first attempt by water users in Coloradoâs San uis Valley to regulate groundwater use to achieve sustainable aquifer levels and prevent injury to senior surface water rights. See San Antonio, 270 P.3d at 933â35, 941â44 (describing the creation of the Subdistrict and the Amended Plan and the Amended Planâs provisions); see generally Â§ 37-48-108, C.R.S. (2014) (describing subdistricts and defining a plan of water management); Â§ 37-48-126, C.R.S. (2014) (describing plans of water management); Â§ 37-92-501, C.R.S. (2014) (discussing State Engineer approval and judicial review of groundwater management plans).
 
 Â¶3Â Â Â Â Â Â  Members of the Subdistrict are landowners within the District who rely on wells or all or part of their irrigation water supply for lands north of the Rio Grande RiverÂ within the closed basin area of the San Luis Valley, in Water Division No. 3.[1] As described in San Antonio, water levels in the unconfined aquifer within the Subdistrict have declined significantly due to increased groundwater consumption and sustained drought. 270 P.3d at 941. The overall objective of the Amended Plan is to provide a water management system of self-regulation within the Subdistrict (in lieu of state-imposed limits on the use of irrigation wells) using economic-based incentives to promote responsible management and use of irrigation water and ensure the protection of senior surface water rights. Id. Subdistrict members are required to contribute financially (through assessment of various fees tethered in part to a farm unitâs net groundwater consumption) to fund Subdistrict operations that, among other activities, provide economic incentives to fallow or permanently retire lands to reduce irrigation water consumption. Id. at 941â42.


 
 Â¶4Â Â Â Â Â Â  The Amended Plan requires the Subdistrict to prepare, and obtain the State ngineerâs approval of, an ARP that prevents injury to senior water rights. Id. at 943â44. Each ARP must estimate anticipated stream depletions caused by groundwater pumping within the Subdistrict during the replacement plan year, including lagged depletions caused by prior-year pumping. Id. at 943. The ARP must then provide a procedure and timeline to deliver replacement water to any injured rights on the RioÂ Grande or Conejos Rivers or other stream, including delivery to Rio Grande Compact gauges to reduce any Compact curtailment. Id. at 943â44.


 
 Â¶5Â Â Â Â Â Â  The water court retained jurisdiction under the 2010 Decree to ensure the ubdistrict operates the Amended Plan in conformity with the terms of the courtâs decree and to address any alleged injury in the operation of the Amended Plan. See id. at 935, 941, 944â45 (describing the water courtâs retained jurisdiction); see also Â§ 37-92-501(4)(c) (requiring the water court to retain jurisdiction over a water management plan).
 
 Â¶6Â Â Â Â Â Â  Pursuant to this retained jurisdiction, the water court reviewed objections to the 012 ARP in this case. Following several pretrial rulings and a two-day trial in October 2012, the water court ultimately upheld the State Engineerâs and the Subdistrictâs approval of the 2012 ARP in a detailed, forty-three-page order setting forth its findings of fact, conclusions of law, judgment, and decree.
 
 Â¶7&Â Â Â Â Â Â  Objectors San Antonio, Los Pinos and Conejos River Acequia Preservation ssociation, Save Our Senior Water Rights, LLC, Richard Ramstetter, and Costilla Ditch Company (âObjectorsâ) are senior surface water right holders on the Rio Grande River and its tributaries. They appeal from two of the water courtâs pretrial rulings as well as its judgment and decree upholding the 2012 ARP.
 
 Â¶8Â Â Â Â Â Â  As set forth more fully below, we conclude that the 2012 ARP complied with the mended Plan and 2010 Decree and protected against injury to senior surface water rights. Accordingly, we affirm the water courtâs August 2012 pretrial orders and itsÂ April 2013 judgment and decree upholding the Subdistrictâs and the State Engineerâs approval of the 2012 ARP.
 
 I. Facts and Procedural History
 
 A. The 2012 Annual Replacement Plan


 
 Â¶9Â Â Â Â Â Â  The Subdistrict filed its 2012 ARP with the water court and submitted it to the State Engineer for review on April 13, 2012. The State Engineer determined that the 2012 ARP sufficiently identified sources, availability, and amounts of replacement water to remedy injurious depletions and approved the 2012 ARP on May 1, 2012.
 
 Â¶10Â Â Â Â Â Â  Two aspects of the 2012 ARP are relevant to this appeal. First, the 2012 ARP identified 2500 acre-feet of Closed Basin Project production as a source of replacement water. The ARP noted that the projected production of the Closed Basin Project to be delivered to the Rio Grande during 2012 was 11,500 acre-feet of water and that the Rio Grande Water Users Association Board of Directors passed a motion to allocate, on a one-time basis, up to 2500 acre-feet of that water to replace injurious depletions under the 2012 ARP. Second, the 2012 ARP included a comprehensive list of Subdistrict wells but did not provide a separate list of augmentation plan wells or otherwise identify within its comprehensive list which wells were covered by augmentation plans; moreover, it included the pumping from augmentation plan wells for purposes of calculating total groundwater consumption within the Subdistrict.


 
 B. Challenges to the 2012 Annual Replacement Plan and the Water
 Courtâs Ruling
 
 Â¶11Â Â Â Â Â Â  On May 15, 2012, Objectors invoked the water courtâs retained jurisdiction in the 2010 Decree by challenging the Subdistrictâs and the State Engineerâs approval of the 2012 ARP.
 
 Â¶12Â Â Â Â Â Â  The parties filed several pretrial motions, two of which are at issue here. First, Objectors filed a Motion for a Determination that the 2012 Annual Replacement Plan is Not In Effect and For an Order That the State Engineer Curtail All Subdistrict Well Pumping.[2] Objectors argued that an ARP is an extension or completion of the Amended Plan, and, therefore, the water court must review it by the same standard as the Amended Plan. In San Antonio, we held that a plan of groundwater management is akin to water rules and regulations. 270 P.3d at 939â40 (holding that the water court must review a groundwater management plan using the same standard as that for review of water rules and regulations). We held in Simpson v. Bijou Irrigation Co. that water rules and regulations cannot go into effect until the courts resolve all objections to them. 69 P.3d 50, 55, 72 (Colo. 2003), as modified on denial of rehâg (May 27, 2003). Thus, Objectors argued that because the 2012 ARP was an extension of the Amended Plan, it likewise could not go into effect until the courts resolve all objections to it.


 
 Â¶13Â Â Â Â Â Â  The water court denied this motion in an order dated August 9, 2012. The water court observed that Objectorsâ argument was effectively an extension of their previous argument, rejected by both the water court and this court in San Antonio, 270 P.3d at 931â32, that the Amended Plan should not have been approved because it lacked the details supplied in the 2012 ARP. The water court reasoned that if the Amended Plan was not complete without an ARP, it would not have been approved. See id. Thus, it concluded that an ARP is not a part, extension, or completion of the Amended Plan but, rather, a tool the Subdistrict and the Division Engineer use to predict annual stream depletions and provide the method by which, during the replacement plan year, the Subdistrict will replace those stream depletions in time, amount, and location to prevent injury.
 
 Â¶14Â Â Â Â Â Â  Further, the water court reasoned that it reviews an ARP pursuant to its retained jurisdiction under section 37-92-501(4)(c), C.R.S. (2014), to consider the operation, as opposed to the creation, of a water management plan. Unlike the Amended Plan, an ARP is not akin to a proposed water rule or regulation, and the court is not required to stay operation of an ARP until all challenges are resolved. The water court further observed that, given that replacement plans are created on an annual basis, to stay the effect of an ARP until all challenges are resolved would render operation of the Amended Plan impossible.
 
 Â¶15Â Â Â Â Â Â  Second, Supporters moved to dismiss ten of Objectorsâ challenges to the 2012 ARP under C.R.C.P. 12(b)(5) on grounds that the water court and this court had already decided these issues. The water court partially granted and partially denied the motionÂ in an order dated August 10, 2012. It ruled that the law of the case doctrine prevented Objectors from raising challenges that the 2010 Decree and San Antonio, 270 P.3d at 930â31, had resolved. The water court reasoned that although it had discretion to reconsider its prior rulings under the law of the case doctrine, it was precluded from reconsidering rulings that had been appealed and affirmed. See People v. Roybal, 672 P.2d 1003, 1005 (Colo. 1983). The court then examined Objectorsâ ten challenges and dismissed eight of them in whole or in part. Specifically, the water court dismissed all claims that contested the methodology approved in the 2010 Decree and San Antonio, 270 P.3d at 931â32.


 
 Â¶16Â Â Â Â Â Â  At the time of trial, only two issues remained: (1) whether water produced by Closed Basin Project wells was an appropriate and suitable source of replacement water in the 2012 ARP to prevent injury to senior water rights; and (2) whether the 2012 ARPâs treatment of augmentation plan wells violated the Amended Plan and 2010 Decree and rendered the 2012 ARP invalid. Following a two-day trial in October 2012, the water court entered its detailed findings of fact, conclusions of law, judgment, and decree on April 10, 2013.
 
 Â¶17Â Â Â Â Â Â  Relevant here, the water court concluded that Closed Basin Project water was an adequate and suitable source of replacement water in the 2012 ARP to prevent injury to senior water rights. The water court reiterated findings of fact it made in the 2010 Decree regarding the use of water produced by the Closed Basin Project. It observed that it determined in the 2010 Decree that the inclusion of water produced by the Closed Basin Project as part of the Subdistrictâs ARP was âclearly within the scope of the beneficial uses set forth in the Closed Basin Project decree.â The water court concluded that the Subdistrict could use Closed Basin Project water both to meet Rio Grande Compact obligations and to replace injurious depletions from groundwater pumping under the 2012 ARP. Releasing Closed Basin Project water into the Rio Grande makes additional water available for upstream diversion and reduces curtailment of senior surface water rights, thus avoiding or replacing injurious depletions.
 
 Â¶18Â Â Â Â Â Â  The water court also rejected Objectorsâ contention that water produced from the Closed Basin Project is salvaged from evaporation and evapotranspiration and must be administered within the priority system under this courtâs ruling in Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc., 529 P.2d 1321, 1327 (Colo. 1974), as modified on denial of rehâg (Jan. 20, 1975). The water court reasoned that the Closed Basin Decree specifically found that project wells lower the water table to reduce water losses that would otherwise occur, producing water that would not normally make its way to the Rio Grande. Thus, the water court determined that water produced by the Closed Basin Project is akin to a form of developed water recognized by this court in Shelton Farms; that is, water found âwithin the system, [w]hich would never have normally reached the river or its tributaries.â Id. at 1324. In any event, the water court reasoned that under Closed Basin Landowners Association v. Rio Grande Water Conservation District, a challenge based on Shelton Farms, 529 P.2d at 1327, to the Closed Basin Decreeâs award of a water right for water produced by the reduction of evaporation and evapotranspiration amounted to an improper collateral attack on the Closed Basin Decree. See 734 P.2d 627, 636â37 (Colo. 1987).


 
 Â¶19Â Â Â Â Â Â  The water court also concluded that the 2012 ARPâs treatment of augmentation plan wells was appropriate and that its failure to include a list of augmentation plan wells separate from Subdistrict wells, although improper, did not render the 2012 ARP invalid.
 
 Â¶20Â Â Â Â Â Â  The water court reasoned that its explanation of the term âNon-Benefitted Subdistrict Landâ in the 2010 Decree made clear that Subdistrict landowners with augmentation plan wells may opt out of the provisions of the Amended Plan, but the Amended Plan does not force those users to do so. The water court also recognized that, in the 2010 Decree, the court viewed augmentation plan wells and the land they served in an âeither/orâ context: Either a well and the land it served was part of an augmentation plan, or it was part of the Subdistrict. But this was because, at the time of the 2010 Decree, the court had not been presented with blended circumstances now coming to lightâfor example, wells only partially covered by an augmentation plan, lands served both by augmentation plan wells and non-augmented wells, or farm operators who desired to include all lands, including part of a farm served by augmentation plan wells, in one farm unit for purposes of determining Subdistrict fees. The water court reasoned that allowing these wells into the Subdistrict (and therefore allowing the 2012 ARP to cover their unaugmented pumping) did not violate the 2010 Decree; rather, the 2010 Decree does not preclude the inclusion of the unaugmented portion of the pumping of an augmentation plan well if the well owner desires to be included in the Subdistrict.


 
 Â¶21Â Â Â Â Â Â  Further, the water court found that, in the 2012 ARP, the Subdistrict included all of the pumping from augmentation plan wells (that is, both the augmented and unaugmented portions) as part of Subdistrict well pumping for purposes of calculating the Subdistrictâs total groundwater consumptive use. The Subdistrict, however, did not include all recharge from these augmentation plan wells when it calculated the Subdistrictâs net groundwater pumping. Thus, although the twenty-plus wells at issue represented a small fraction of the Subdistrict wells, the inclusion of all pumping from augmentation plan wells had the effect of slightly overstating the net groundwater consumptive use due to Subdistrict well pumping (and thus the amount of injurious depletions) that the Subdistrict needed to replace. Thus, the water court found that the 2012 ARP slightly overcompensated the river for well depletions.
 
 Â¶22Â Â Â Â Â Â  Finally, the water court concluded that the 2012 ARPâs failure to include the required list of augmentation plan wells, although a technical violation of the Amended Plan, did not render the ARP invalid. The water court reasoned that this violation did not interfere with the primary goals of the Amended Planâand that, therefore, the doctrine of substantial compliance should apply. Applying Fabec v. Beck, 922 P.2d 330, 341 (Colo. 1996), the court determined that: noncompliance was minimal; although the failure affected the transparency of the process and the publicâs access to information, it did not impact the Amended Planâs overall objectives; the Subdistrict and the State Engineer made good faith efforts to comply; and the omission did not cause harm. Thus, the water court concluded that the failure to include a separate list of augmentation plan wells did not require invalidation of the 2012 ARP. It ordered theÂ Subdistrict to include the list of augmentation plan wells in all future ARPs and set forth the specific information that this list must contain. The water court denied all other objections to the Subdistrictâs and the State Engineerâs approval of the 2012 ARP.


 
 Â¶23Â Â Â Â Â Â  Objectors now appeal from the water courtâs August 2012 orders and the April 2013 ruling upholding the 2012 ARP.
 
 II. Standard of Review
 
 Â¶24Â Â Â Â Â Â  We accept the water courtâs factual findings on appeal unless they are so clearly erroneous as to find no support in the record. Burlington Ditch Reservoir & Land Co. v.Â  Metro Wastewater Reclamation Dist., 256 P.3d 645, 660 (Colo. 2011), as modified on denial of rehâg (June 20, 2011); S. Ute Indian Tribe v. King Consol. Ditch Co., 250 P.3d 1226, 1232 (Colo. 2011).
 
 Â¶25Â Â Â Â Â Â  We review the water courtâs conclusions of law de novo. S. Ute, 250 P.3d at 1232. Whether a claim is barred by the law of the case doctrine is a question of law, Civil Serv.Â  Commân v. Carney, 97 P.3d 961, 966 (Colo. 2004); see Super Valu Stores, Inc. v. Dist.Â  Court, 906 P.2d 72, 79 (Colo. 1995), as modified on denial of rehâg (Dec. 4, 1995), as is the interpretation of a prior decree, Burlington Ditch, 256 P.3d at 660. Likewise, statutory construction is an issue of law subject to de novo review. Mun. Subdist., N. Colo. WaterÂ  Conservancy Dist. v. Getty Oil Exp. Co., 997 P.2d 557, 561 (Colo. 2000). Our duty in interpreting any statutory provision is to effectuate the General Assemblyâs intent in enacting it. S. Ute, 250 P.3d at 1232. If the text of a statute is clear, we apply that language as written. Id. at 1233.


 
 III. Analysis
 
 Â¶26Â Â Â Â Â Â  We note that Objectorsâ challenges fail to allege or establish injury from the operation of the 2012 ARP and Amended Plan but, instead, largely raise legal challenges to these documents. First, Objectors argue that the water courtâs retained jurisdiction required it to hear all challenges to the ARP and the Amended Planâ including issues previously decided. They further contend the 2012 ARP cannot go into effect until the courts resolve all objections to it and, therefore, that the State and Division Engineers must curtail all well pumping while objections remain pending. See Â§ 37-92-502(2)(a), C.R.S. (2014); see also Â§ 37-92-501(4)(c), C.R.S. (2014). Next, they maintain that the water court erred in ruling that the Subdistrict may use Closed Basin Project water for replacement under the 2012 ARP. Finally, they argue that the inclusion of augmentation plan wells as Subdistrict wells in the 2012 ARP violated the Amended Plan and the 2010 Decree and that the 2012 ARP is invalid because it does not include the required list of augmentation plan wells with maps and links to decrees. We disagree with each of Objectorsâ contentions.
 
 Â¶27Â Â Â Â Â Â  We hold that: (1) the water court was not authorized to reconsider the Amended Planâs methodology that this court approved in San Antonio, 270 P.3d at 931â32; (2) courts are not required to stay operation of an ARP until all challenges are resolved; (3) the 2012 ARPâs inclusion of Closed Basin Project water as a source of replacement water for depletions caused by Subdistrict well pumping was adequate and suitable to prevent injury to senior surface water rights; and (4) the inclusion of augmentation plan wells as Subdistrict wells for the purpose of calculating total groundwater depletionsÂ did not violate the 2010 Decree or the Amended Plan, and the omission of a separate list of augmentation plan wells did not invalidate the 2012 ARP.


 
 Â¶28Â Â Â Â Â Â  Accordingly, we affirm the water courtâs August 2012 orders as well as its April 2013 judgment and decree.
 
 A. Retained Jurisdiction and the Law of the Case Doctrine
 
 Â¶29Â Â Â Â Â Â  Objectors contend that their invocation of the water courtâs retained jurisdiction in the 2010 Decree under section 37-92-501(4)(c) required the court to review all challenges to the Amended Plan and the 2012 ARP, notwithstanding the findings in the 2010 Decree and this courtâs decision in San Antonio, 270 P.3d at 931â32. Specifically, Objectors assert that numerous aspects of the Amended Plan were not before the water court in 2010 because the Amended Planâs actual operation was not known until the Subdistrict submitted its ARP. Objectors also contend that this courtâs holding in San Antonio, id., does not preclude their challenges. We disagree.
 
 Â¶30Â Â Â Â Â Â  In the 2010 Decree, the water court retained jurisdiction under section 37-92-501(4)(c) to ensure that the Subdistrict operates the Amended Plan in compliance with the 2010 Decree and that the Plan prevents injury to senior surface right holders. Section 37-92-501(4)(c) grants the court broad powers of oversight to consider the operation of a plan of water management: âThe water judge shall retain jurisdiction over the water management plan for the purpose of ensuring the plan is operated, and injury is prevented, in conformity with the terms of the courtâs decree approving the water management plan.â (Emphasis added.) Under the terms and conditions of the 2010 Decree, the water court specifically retained jurisdiction âto reconsider, enforceÂ and require alteration or even termination of a plan if it fails to prevent injury or is not operated in accordance with the terms of the Courtâs decree and the plan itself.â We acknowledged this broad retained jurisdiction in San Antonio. 270 P.3d at 935, 944â45.


 
 Â¶31Â Â Â Â Â Â  That said, the water court correctly concluded that, to the extent Objectorsâ challenges sought to resurrect issues with respect to the Amended Plan addressed in San Antonio, id. at 931â32, this courtâs opinion was binding law of the case. Under the law of the case doctrine, âprior relevant rulings made in the same case are to be followed unless such application would result in error or unless the ruling is no longer sound due to changed conditions.â People v. Dunlap, 975 P.2d 723, 758 (Colo. 1999). A trial court has discretion to apply the law of the case doctrine to its own prior rulings. Id. However, the law of the case established by an appellate court must be followed on remand in subsequent proceedings before a trial court. People v. Roybal, 672 P.2d 1003, 1005 (Colo. 1983) (citing Cache La Poudre Reservoir Co. v. Water Supply & Storage Co., 62 P. 420 (Colo. 1900)). This principle protects the finality of judgments and ensures lower courtsâ adherence to decisions of higher courts. Id.
 
 Â¶32Â Â Â Â Â Â  In San Antonio, we concluded that the Amended Plan as decreed meets the applicable statutory criteria and is sufficiently comprehensive and detailed to permit the continued use of groundwater consistent with preventing material injury to senior surface water rights. 270 P.3d at 931â32. The water court correctly concluded that, to the extent that Objectors raised challenges that were resolved by the 2010 Decree and affirmed on appeal, it was bound to follow the previously decided law of the case. We therefore affirm the water courtâs August 10, 2012 order dismissing ObjectorsâÂ challenges that sought reconsideration of methodologies for forecasting hydrological conditions and for calculating Subdistrict well pumping and recharge credit that were approved in the 2010 Decree and affirmed by this court in San Antonio.


 
 B. Stay of the 2012 Annual Replacement Plan
 
 Â¶33Â Â Â Â Â Â  Objectors contend that each ARP is an extension or completion of the Amended Plan, and, therefore, like the Amended Plan, an ARP is tantamount to rules and regulations promulgated by the State Engineer. See San Antonio, 270 P.3d at 939â40 (observing that section 37-92-501(4)(c) provides that judicial review of the State Engineerâs approval of a groundwater management plan shall proceed under section 37-92-501(3)(a) for review of a proposed rule or regulation, such that âthe same substantive standards apply to a ground water management plan as apply to proposed rules and regulationsâ). Objectors argue that this courtâs holding in Simpson v. BijouÂ  Irrigation Co., 69 P.3d 50, 55, 59 (Colo. 2003), as modified on denial of rehâg (May 27, 2003), that proposed water rules and regulations cannot take effect before all protests are resolved, requires the court to stay operation of the 2012 ARP. In Objectorsâ view, the 2012 ARP cannot yet go into effect, and groundwater pumping in the Subdistrict is not authorized under section 37-92-501(4)(c); thus, section 37-92-502(2)(a) requires the State Engineer to immediately curtail all pumping. We disagree.
 
 Â¶34Â Â Â Â Â Â  Objectorsâ argument hinges on its premise that the ARP is an extension or completion of the Amended Plan. But as the water court observed, if it or this court believed the Amended Plan to be incomplete without an ARP, the Amended Plan would not have been upheld. Indeed, we noted in San Antonio that âthe GeneralÂ Assembly did not intend that subdistricts would have to identify in detail their future sources of replacement water (and timings and amounts) upon adoption of [a] plan.â 270 P.3d at 946. We agree with the water court that an ARP is not a part, extension, or completion of the Amended Plan but, rather, is a separate tool to predict annual stream depletions and provide the method by which the Subdistrict will replace those depletions in a given plan year.


 
 Â¶35Â Â Â Â Â Â  Importantly, unlike the provision for judicial review of the State Engineerâs approval of a groundwater management plan, section 37-92-501(4)(c) does not state that retained jurisdiction to review operation of the Amended Plan shall proceed under section 501(3)(a). The 2012 ARP plainly concerns the operation, not the creation, of the Amended Plan. The water court approved, and this court affirmed, the contents, disclosures, formulas, and timelines of the ARP framework as set out in the Amended Plan and 2010 Decree. See San Antonio, 270 P.3d at 935. The purpose of the water courtâs retained jurisdiction under section 501(4)(c) is to review the operation of the Amended Planâspecifically, the ARPâs conformity to the terms of the Amended Plan and 2010 Decree and its ability to prevent injury to senior right holders. Thus, review of the 2012 ARP is not akin to review of a proposed rule or regulation, and nothing requires courts to stay operation of the 2012 ARP pending resolution of all challenges to it.
 
 Â¶36Â Â Â Â Â Â  In any event, this case is distinguishable from Bijou Irrigation, 69 P.3d at 50. There, we expressed concern that the statutory scheme provided no opportunity for water users to comment prior to the adoption of rules and regulations, so the hearingÂ procedures were the âonly meaningful opportunity for interested parties to protest potential infringements on their water rights.â Id. at 72. Review of an ARP does not implicate the same due process concerns. Here, Objectors had a full and fair opportunity to be heard and present their objections to the Amended Planâand the Amended Planâs detailed ARP frameworkâin the 2010 proceedings. Thus, the rationale of Bijou Irrigation does not extend to individual ARPs. See id.


 
 Â¶37Â Â Â Â Â Â  Finally, we note that, as a practical matter, to delay the effect of the ARP pending resolution of any objections to it would permit any objector to halt the operation of an ARP each year simply by asserting (much less establishing) that the ARP did not conform to the Amended Plan or the terms of the 2010 Decree. Even if objections proved meritless, to stay the operation of the ARP and, hence, the Amended Plan, could prevent the Plan and ARP from ever going into effect. We will not interpret section 37-92-501(4)(c) to produce such an absurd result. See Frazier v. People, 90 P.3d 807, 811 (Colo. 2004); State v. Nieto,993 P.2d 493, 501 (Colo. 2000).
 
 Â¶38Â Â Â Â Â Â  In sum, we affirm the water courtâs August 9, 2012 order denying Objectorsâ Motion for a Determination that the 2012 Annual Replacement Plan is Not In Effect and For an Order That the State Engineer Curtail All Subdistrict Well Pumping.
 
 C. Closed Basin Project Water
 
 Â¶39Â Â Â Â Â Â  The 2012 ARP identified 2500 acre-feet of water from Closed Basin Project production as a source of replacement water to remedy injurious depletions from Subdistrict well pumping. Objectors contest the adequacy and suitability of this water for replacement. We agree with the water court that the 2012 ARPâs inclusion of ClosedÂ Basin Project water was adequate and suitable to replace injurious depletions and prevent injury to senior water rights.


 
 Â¶40Â Â Â Â Â Â  The Closed Basin Project[3] is a federal reclamation project that aids Colorado in meeting its obligations under the Rio Grande Compact.[4] The Closed Basin Project is located in a closed basin area lying over the unconfined aquifer in the San Luis Valley. Simpson v. Cotton Creek Circles, LLC, 181 P.3d 252, 255 (Colo. 2008). Project wells pump water from a sump area in the closed basin to lower the water table and reduce surface evaporation and evapotranspiration. Id.; Closed Basin Landowners Assân v. RioÂ  Grande Water Conservation Dist., 734 P.2d 627, 630 (Colo. 1987). Conveyance channels then deliver the water produced by the project to the Rio Grande, downstream of Alamosa, below all surface diversion points in the Subdistrict. Closed Basin Landowners Assân, 734 P.2d at 629.
 
 Â¶41Â Â Â Â Â Â  Closed Basin Project water was decreed to the Rio Grande Water Conservation District in Case No. W-3038. The Closed Basin Decree recited the beneficial uses of the appropriation as:
 
 Irrigation, domestic, industrial, recreational, fish culture, wildlife uses by exchange and sale, and regulation and maintenance of minimum stream flows, and to provide supplemental water to meet Coloradoâs obligation under the Rio Grande Compact, and accomplish maximum utilization of Coloradoâs share of the flows of the Rio Grande River under the Compact.


 
 Â¶42Â Â Â Â Â Â  The Amended Plan states that the Subdistrict must provide in its ARP â[a]n estimate of total annual Closed Basin Project production for the Plan Year and the portion thereof allocated to the Rio Grande and/or the Subdistrict and available for replacement of injurious well depletions.â In the 2010 Decree, the water court found that Closed Basin Project water delivered to the Rio Grande can be substituted for Compact deliveries otherwise required, thereby making additional water available for upstream diversion. The water court expressly found that the use of Closed Basin Project water is an appropriate source of replacement water:
 
 Including Closed Basin Project production as part of the Subdistrictâs Annual Replacement Plan is clearly within the scope of the beneficial uses set forth in the Closed Basin Project decree, and the Subdistrictâs inclusion of Project water as a possible replacement source is not prohibited. In fact, integrating the Subdistrictâs plan of water management with the obligation for water delivery under the Rio Grande Compact is an essential statutory requirement. Coordination with existing methods of addressing the Compact obligation and proven methods of improving water availability to senior surface water rights is both sensible and prudent.
 
 2010 Decree, Â¶ 304.
 
 Â¶43Â Â Â Â Â Â  Objectors challenged the Subdistrictâs listing of Closed Basin Project water as a source of replacement water in San Antonio. 270 P.3d at 951. However, we declined to address this issue because it was not squarely before us. Id. Rather, we observed that: âThe adequacy, timing and suitability of project water to prevent injury to water rights under the Plan will be addressed through the annual replacement plan procedure.â Id. The adequacy, timing, and suitability of this water as a source of replacement water are now before us.Â 


 
 Â¶44Â Â Â Â Â Â  Objectors assert that the Subdistrict may not use Closed Basin Project water as a source of replacement water in its ARP because: (1) Project water is tributary groundwater, and, therefore, pumping such water is presumed to cause injury to surface rights; (2) it is not decreed for use as a replacement supply; and (3) use of the water as part of an ARP unreasonably interferes with the Stateâs ability to fulfill its Compact obligations. We reject each of these contentions.
 
 Â¶45Â Â Â Â Â Â  Objectors first contend that the Closed Basin Project wells presumptively cause injurious depletions to the Rio Grande because the closed basin is tributary to the Rio Grande, and any withdrawal of groundwater tributary to this over-appropriated system is presumed to be injurious to senior water right owners. Objectors further argue that Closed Basin Project water is salvaged because project pumping lowers the water table to avoid evaporation and evapotranspiration losses. Objectors contend that, under Southeastern Colorado Water Conservancy District v. Shelton Farms, Inc., 529 P.2d 1321, 1324â25 (Colo. 1974), as modified on denial of rehâg (Jan. 20, 1975), such salvaged water must be administered within the priority system.
 
 Â¶46Â Â Â Â Â Â  The Closed Basin Decree explains the Closed Basin Project in detail and states that â[t]he water developed by drainage and the operation of the proposed wells would be collected in and transported toâ the Rio Grande. (Emphasis added.) The Decree similarly states that the project will âcollect and introduce into the Rio Grande River a large volume of water.â (Emphasis added.) Regardless of whether such water is characterized as salvaged or developed, the Closed Basin Decree makes clear that water produced by the Closed Basin Project is water that would not otherwise have made itsÂ way to the Rio Grande. Thus, the water court in this case could not presume that pumping Project wells causes injury to senior surface rights, and Objectors presented no evidence that Project water would in fact reach the Rio Grande without the Projectâs operations. In any event, this court has previously rejected a similar challenge based on Shelton Farms, 529 P.2d at 1321, as an impermissible collateral attack on the Closed Basin Decree. Closed Basin Landowners Assân, 734 P.2d at 636â37; see also Lake Durango Water Co. v. Pub. Utils. Commân, 67 P.3d 12, 22 (Colo. 2003), as modified on denial of rehâg (Apr. 28, 2003) (noting that a final judgment by a court with proper jurisdiction is not subject to collateral attack).


 
 Â¶47Â Â Â Â Â Â  Objectors next contend that Closed Basin Project water is not decreed for use as replacement water in an ARP and that its use as replacement water interferes with its ability to meet Compact obligations. However, when Closed Basin Project water is delivered to the Rio Grande, it assists Colorado in meeting its Compact obligations and allows senior surface right holders to increase diversions by an equivalent amount of water. Because introduction of Closed Basin Project water into the Rio Grande reduces Compact curtailment of senior surface rights, it serves a dual purpose of replacing injurious depletions and meeting Compact obligations. In other words, Closed Basin Project water can simultaneously replace water diverted out of priority and meet Coloradoâs obligations under the Rio Grande Compact. Therefore, the 2012 ARPâs designation of Closed Basin Project water as replacement water involved a suitable use of the water under the terms of the Closed Basin Decree.


 
 Â¶48Â Â Â Â Â Â  Further, the operation of the Amended Plan and 2012 ARP is integrated with the administration of the Rio Grande Compact. The Compact has an annual delivery schedule, see Rio Grande Compact, art. III (codified at Â§ 37-66-101, C.R.S. (2014)), so if the Subdistrict inadvertently under replaces injurious depletions, the Division Engineer can reduce existing Compact curtailments to make more water available to surface right holders. The Subdistrict can then replace Compact under-deliveries by delivering more replacement water in the next month. See id. This arrangement prevents injury to senior right holders, assists the State in meeting Compact obligations, and is consistent with the âmaximum utilization of Coloradoâs share of the flows of the Rio Grande Riverâ under the Closed Basin Decree.
 
 Â¶49Â Â Â Â Â Â  We hold that the Closed Basin Project provided a suitable source of replacement water in the 2012 ARP because the water could simultaneously meet Compact obligations and replace injurious depletions. We further hold that use of the Closed Basin Project water rights for replacement falls within their decreed purposes. Therefore, the water court properly concluded that Closed Basin Project water was adequate and suitable to prevent injury to senior surface right holders.
 
 D. Augmentation Plan Wells
 
 Â¶50Â Â Â Â Â Â  Objectors argue that the treatment of augmentation plan wells in the 2012 ARP violated the Amended Plan, which, in Objectorsâ view, mandates exclusion of augmentation plan wells from the Subdistrict. Specifically, Objectors note that the 2012 ARP included pumping from augmentation plan wells in its calculations of the Subdistrictâs total consumptive groundwater use. Objectors further contend that theÂ 2012 ARP authorized augmentation plan wells to pump more water than allowed under the decrees for those wells, in violation of the Amended Plan. Finally, the 2010 Decree required the Subdistrict to provide in the ARP a separate list of wells with augmentation plans, links to the plans, and maps of the locations of these wells. Objectors contend that the Subdistrictâs failure to include this separate list of augmentation plan wells with the 2012 ARP violated the Amended Plan and 2010 Decree and invalidates the 2012 ARP.


 
 Â¶51Â Â Â Â Â Â  We first address Objectorsâ contention that the ARP violated the Amended Plan by including augmentation plan wells as Subdistrict wells for the purpose of calculating total groundwater depletions and hold that the inclusion of the augmentation plan wells at issue here did not violate the 2010 Decree or the Amended Plan. We then consider the Subdistrictâs failure to include the required list of augmentation plan wells in the 2012 ARP and hold that this technical violation of the Amended Plan does not require invalidation of the 2012 ARP.
 
 1. The 2012 Annual Replacement Planâs Inclusion of Augmentation Plan Wells as Subdistrict Wells
 
 Â¶52Â Â Â Â Â Â  Certain irrigation wells located within the Subdistrict operate under judicially decreed augmentation plansâmeaning that some or all of the groundwater pumped from those wells is replaced to the stream or recharged to the aquifer. The Amended Plan does not aim to replace water pumped from wells subject to an augmentation plan: It defines land âirrigated with groundwater pursuant to, and in compliance with, theÂ provisions of a validly decreed plan for augmentationâ as âNon-Benefitted Subdistrict Land.â


 
 Â¶53Â Â Â Â Â Â  However, the 2012 ARPâs Database of Wells stated that the Subdistrict wells included some wells that were part of an augmentation plan. Objectors contend that the inclusion of these wells in the 2012 ARP violated the Amended Plan and 2010 Decree. We conclude, however, that the inclusion of these wells was warranted and that the Subdistrictâs treatment of them caused no injury to surface water right users.
 
 Â¶54Â Â Â Â Â Â  The augmentation plan wells in the 2012 ARP were included in the list for purposes of assessing fees; any portion of their pumping not covered by their augmentation plans was subject to fees, and the Subdistrict replaced the injurious depletions due to this pumping as part of the ARP. In other words, the Subdistrict charged farm operators who had augmentation plan wells only for water pumped that was not covered by the augmentation plan and for acres irrigated with water that was not pumped pursuant to an augmentation plan.
 
 Â¶55Â Â Â Â Â Â  In its brief discussion of augmentation plan wells, the water courtâs 2010 Decree assumed that a well was either part of an augmentation plan or included in the Subdistrict. In reviewing the 2012 ARP, however, the water court found that the augmentation plan wells included as Subdistrict wells actually presented blended circumstances, where a portion of a wellâs pumping was not covered by its augmentation plan, or the lands irrigated used both augmented and unaugmented water, or a farm operator chose to include all wells and land served in one larger farm unit for purposes of determining Subdistrict fees.


 
 Â¶56Â Â Â Â Â Â  We agree with the water court that the inclusion of augmentation plan wells in the 2012 ARP was consistent with the 2010 Decree and Amended Plan. The 2010 Decree explained that the definition of âNon-Benefitted Subdistrict Landâ in the Amended Plan allows landowners within the Subdistrict to âhave a means to operate their surface water and wells outside of the Amended Plan.â This provision contemplates that a landowner with an augmentation plan may instead choose to keep his or her wells within the Subdistrict if he or she desires.
 
 Â¶57Â Â Â Â Â Â  Further, the 2012 ARPâs treatment of augmentation plan wells did not authorize increased pumping from these wells or modify the terms and conditions of the decrees governing these wells. Objectors point to language in the 2012 ARP stating that âif any portion of [the augmentation plan wellsâ] pumping is not covered by their augmentation plans, it is subject to Subdistrict No. 1 fees and Subdistrict No. 1 will replace injurious depletions due to their pumping.â But this language simply recognized the fact that some Subdistrict wells withdraw water both through underlying decrees and through approved augmentation plans. The 2012 ARP assessed well owners only for water not covered by an augmentation plan; this language in no way authorized additional pumping or modified the terms of the decrees governing these wells.
 
 Â¶58Â Â Â Â Â Â  As a final matter, we note that Objectors suffered no injury from the Subdistrictâs treatment of augmentation plan wells. Notably, the 2012 ARP included all pumping from augmentation plan wells for the purposes of calculating total groundwater consumption. Thus, the 2012 ARP slightly overstated net groundwater depletions as aÂ result of Subdistrict well pumping because it did not include all sources of return flow or recharge from wells under augmentation plan decrees to determine net groundwater depletions. Because the 2012 ARP overstated net groundwater pumped, it slightly overcompensated the Rio Grande for Subdistrict well pumping. Thus, the Subdistrictâs treatment of these wells did not injure senior surface right holders.


 
 2. The 2012 Annual Replacement Planâs Failure to Include a Separate List of
 Augmentation Plan Wells
 
 Â¶59Â Â Â Â Â Â  Although the 2012 ARP included a comprehensive list of Subdistrict wells, it is undisputed that it failed to include a separate list of augmentation plan wells as required by the Amended Plan and 2010 Decree. Objectors contend that this violation rendered the 2012 ARP invalid.[5]Â  We disagree.
 
 Â¶60Â Â Â Â Â Â  The failure to include the separate list of augmentation plan wells was a minor omission. A list of augmentation plan wells in the ARP is but one of the Amended Planâs many requirements. Further, only a small fraction of the 3000 wells pumping within the Subdistrict are augmentation plan wells.
 
 Â¶61Â Â Â Â Â Â  Moreover, the water court found that the failure was âan oversight caused by . . . unfamiliarity with the ARP process, the complexity of the ARP and the short period of time [available] to create the ARP.â It âwas not an attempt to mislead or hideÂ information but rather was an honest mistake.â Finally, although the water court determined that the failure to include the list temporarily deprived the public of this information, it found that once the Subdistrict furnished the required information,[6]Objectors did not challenge the inclusion of any specific wells. Thus, the Subdistrictâs delay in providing this information did not prejudice Objectors.


 Â¶62Â Â Â Â Â Â  Given the relatively minor nature of the omission and the absence of any harm, we conclude that the failure to include the separate list of augmentation plan wells did not render the 2012 ARP invalid.

 IV. Conclusion

 Â¶63Â Â Â Â Â Â  We affirm the water courtâs August 2012 orders and its April 2013 judgment and decree upholding the Subdistrictâs and the State Engineerâs approval of the 2012 ARP.


 [1] This court described the unique hydrogeology of the San Luis Valley, including the relationship between the confined aquifer, the unconfined aquifer, and the closed basin area, in Simpson v. Cotton Creek Circles, LLC, 181 P.3d 252, 255 (Colo. 2008), and Alamosa-La Jara Water Users Protection Association v. Gould, 674 P.2d 914, 917â18 (Colo. 1984), as modified on denial of rehâg (Jan. 23, 1984).

 [2] Specifically, Objectors asked the water court to find, as a matter of law, that: (1) the 2012 ARP and Amended Plan were not in effect; (2) section 37-92-501(4)(c), C.R.S. (2014), did not shield Subdistrict well pumping from curtailment when an ARP was not in effect; (3) the State Engineer was obligated to curtail all well pumping that would result in injurious out-of-priority depletions; and (4) the State Engineer therefore needed to immediately curtail all Subdistrict well pumping.

 [3] This court described the Closed Basin Project and its operation in Simpson v. Cotton Creek Circles, LLC, 181 P.3d 252, 255â57 (Colo. 2008).

 [4] This court described the administration of the Rio Grande Compact in Alamosa-La Jara Water Users Protection Association v. Gould, 674 P.2d 914, 918 (Colo. 1983), as modified on denial of rehâg (Aug. 23, 1984).

 [5] Supporters assert that this issue is moot because the 2012 ARP is no longer in effect and subsequent ARPs have included the required list of augmentation plan wells with links to decrees and maps. An issue becomes moot when any relief granted would have no practical legal effect on the existing controversy. Van Schaack Holdings, Ltd. v. Fulenwider, 798 P.2d 424, 426 (Colo. 1990). We nevertheless choose to address this issue because it is capable of repetition yet evading review. See Bijou Irrigation, 69 P.3d at 71; Bd. of Cnty. Commârs v. Crystal Creek Homeownersâ Assân, 14 P.3d 325, 345 (Colo. 2000), as modified on denial of rehâg (Dec. 18, 2000).

 [6] After the commencement of this litigation, Supporters supplied available information about the augmentation plan wells in supplemental memoranda.




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Supreme Court Opinions || June 29, 2015


Back