Opinion by JUDGE HARRIS
¶ 1 Silver Gutierrez was suspended from the Denver Sheriff's Department (DSD) for violating the DSD's personnel rules, including its sexual harassment policy. After an appeal to the Career Services Board (Board), Mr. Gutierrez's suspension was reduced, and the City and County of Denver, on behalf of the DSD, appealed the Board's decision to the district court. The district court concluded that the Board had misconstrued several of the applicable rules, reversed the Board's decision in part, and remanded to the Board.
¶ 2 On appeal, Mr. Gutierrez argues that the district court improperly evaluated his conduct using an objective standard, rather than assessing it based on his subjective intent in light of the informal and somewhat freewheeling culture that defined a subgroup of officers at the DSD. But we agree with the district court that the plain language of the rules at issue does not permit any such subjective considerations.
¶ 3 Accordingly, we affirm that part of the district court's order finding that the hearing officer and the Board applied the incorrect *655 legal standard to evaluate Mr. Gutierrez's conduct. However, we disagree with the district court that Mr. Gutierrez violated the DSD rule that prohibits a request for sexual favors. We remand to the district court with instructions to remand to the Board for reconsideration of the appropriate disciplinary action in light of this opinion.
I. Background
¶ 4 Mr. Gutierrez is a captain with the DSD. Cheryl Arabalo was also a captain with the DSD at the time of the incident at issue but has since been terminated for unrelated reasons. Both Mr. Gutierrez and Ms. Arabalo were on the board of the Denver Sheriff's Foundation (Foundation), an independent nonprofit organization.
¶ 5 The hearing officer's historical findings of fact are undisputed. On August 26, 2010, Mr. Gutierrez was serving as Acting Division Chief for the receiving unit of the Denver County Jail in the absence of two of his superiors. Ms. Arabalo was off-duty but came to Mr. Gutierrez's office to pick up checks for the Foundation. When Ms. Arabalo walked in, Mr. Gutierrez was on the phone. He gestured to her to lift up her shirt and expose her breasts. He then gestured for her to sit on his lap. Two months later, Ms. Arabalo filed a complaint with the Colorado Civil Rights Division, alleging that a coworker had sexually harassed her on August 26, which prompted an investigation by the DSD's Internal Affairs Bureau.
¶ 6 According to the hearing officer's findings, this type of behavior was not uncommon among Foundation board members. The Foundation board members socialized both at work and off-duty. When board members would call one another, they would often answer the phone by asking, "What are you wearing?" The hearing officer determined this was a kind of "tag line" for the group, and that Mr. Gutierrez and Ms. Arabalo would sometimes answer each other's calls in this manner. Further, the hearing officer found that the group had a "locker room culture," in which the board members frequently engaged in "sexual banter," and that Mr. Gutierrez and Ms. Arabalo were "integral parts of that culture."
¶ 7 The DSD held a pre-disciplinary meeting in September 2011, after which it suspended Mr. Gutierrez for seventy-five days for violations of several Career Service Rules and Departmental Orders (DO). Mr. Gutierrez appealed the suspension to the Board. After a hearing, the hearing officer determined that the DSD did not prove the most egregious violations alleged against Mr. Gutierrez and reduced his suspension to thirty days. The hearing officer found that while Mr. Gutierrez's conduct violated some rules and orders charged by the DSD, it did not violate DO 200.15 (displaying disrespectful language or behavior toward an employee), 300.10 (engaging in immoral, indecent, or disorderly conduct), or 2420.1B, the DSD's sexual harassment policy. Both parties appealed the decision to the full Board, which affirmed the hearing officer's decision.
¶ 8 The City appealed the Board's decision to the district court pursuant to C.R.C.P. 106(a)(4). The district court determined that the Board had abused its discretion by finding that Mr. Gutierrez had not violated DO 200.15, 300.10, and 2420.1B. The district court remanded the case to the Board to reconsider the sanction in light of the court's order, and Mr. Gutierrez appealed.
II. Standard of Review
¶ 9 Our review of a district court's decision in a C.R.C.P. 106(a)(4) proceeding is de novo. We sit in the same position as the district court and review the agency's decision for an abuse of discretion. Thomas v. Colo. Dep't of Corr., 117 P.3d 7, 8-9 (Colo.App. 2004). A government body abuses its discretion if it applies an erroneous legal standard or if there is no competent evidence to support its decision. City of Colorado Springs v. Givan, 897 P.2d 753, 756 (Colo. 1995).
¶ 10 We are not the fact finder, and we may not weigh the evidence or substitute our judgment for that of the agency. Kruse v. Town of Castle Rock, 192 P.3d 591, 601 (Colo.App. 2008).
¶ 11 On questions of law, however-such as the interpretation of the agency's *656 rules and regulations-we apply a de novo standard of review. Sheep Mountain All. v. Bd. of Cty. Comm'rs, 271 P.3d 597, 601 (Colo.App. 2011). We will defer to an agency's reasonable interpretation of its personnel rules, Abromeit v. Denver Career Serv. Bd ., 140 P.3d 44, 49 (Colo.App. 2005), but we are not bound to defer to an agency decision that misconstrues or misapplies the law. Stevinson Imps., Inc. v. City & Cty. of Denver, 143 P.3d 1099, 1102 (Colo.App. 2006).
III. DO 200.15
¶ 12 DO 200.15 states that "Deputy Sheriffs and employees shall not willfully or intentionally display any disrespectful, insolent or abusive language or behavior towards any supervisor, Department employee, employee(s) of other official agencies or the public, while on duty."
¶ 13 The hearing officer determined, and the Board agreed, that Mr. Gutierrez did not violate this order. In reaching this conclusion, the hearing officer expressly intended to use an objective standard but in fact applied a subjective standard, considering the particular circumstances of Mr. Gutierrez's employment-including the culture of sexual banter among the Foundation board members, Mr. Gutierrez's subjective intent in making the gestures, and Ms. Arabalo's actual perception of Mr. Gutierrez's conduct. Applying this standard, the hearing officer determined that Mr. Gutierrez did not intend to be disrespectful, and that it was "as likely as not" that Ms. Arabalo welcomed the conduct. Therefore, according to the hearing officer, Mr. Gutierrez did not violate the order.
¶ 14 We agree with the hearing officer and the Board that an objective standard governs DO 200.15. But, like the district court, we conclude that the hearing officer misapplied this standard and therefore abused his discretion. Because the hearing officer misapplied the standard, we do not defer to his conclusion. Stevinson Imps., Inc., 143 P.3d at 1102.
¶ 15 While purporting to apply an objective standard, the hearing officer explicitly considered whether Mr. Gutierrez subjectively intended to be disrespectful, and whether Ms. Arabalo was subjectively offended. By definition, an objective standard does not permit consideration of the parties' intent; rather, under an objective standard, a fact finder evaluates conduct in light of how a reasonable person would act or respond in similar circumstances. See Survey Sols., Inc. v. Indus. Claim Appeals Office, 956 P.2d 1275, 1276 (Colo.App. 1998) (an objective standard, "rather than a subjective one based on the particular claimant's own sensitivities or reactions," should govern determination whether workplace conduct was harassing); compare Black's Law Dictionary 1624 (10th ed. 2014) (defining "objective standard" as "[a] legal standard that is based on conduct and perceptions external to a particular person"), with id. (defining "subjective standard" as "[a] legal standard that is peculiar to a particular person and based on the person's individual views and experiences"). By considering the parties' intent, the hearing officer injected an inappropriate element of subjectivity into his findings.
¶ 16 Instead, the hearing officer should have considered whether the conduct would have been objectively disrespectful to a reasonable person in Ms. Arabalo's position. Mr. Gutierrez does not argue that his conduct would not have been perceived as disrespectful by a reasonable person; rather, he insists that we must evaluate his conduct based on whether it was disrespectful within the Foundation board members' "locker room culture." We are not persuaded.
¶ 17 We interpret an agency's personnel rules in accordance with basic tenets of statutory construction. Abromeit, 140 P.3d at 49. Accordingly, we will not construe a rule to contradict its purpose. State v. Nieto, 993 P.2d 493, 501 (Colo. 2000) ("[A] reviewing court must follow the statutory construction that best effectuates the intent of the General Assembly and the purposes of the legislative scheme."); People v. Frazier, 77 P.3d 838, 839 (Colo.App. 2003) ("[A] court may apply rules of statutory construction to determine the construction that accords with the objective of the legislation."), aff'd, 90 P.3d 807 (Colo. 2004). In addition, we interpret personnel rules to avoid absurd or illogical *657 results. See Frazier v. People, 90 P.3d 807, 811-12 (Colo. 2004) (refusing to interpret statute to produce result contradicting clear legislative intent); DeLong v. Trujillo, 25 P.3d 1194, 1199 (Colo. 2001).
¶ 18 Applying these maxims to DO 200.15, we cannot agree with the hearing officer that Mr. Gutierrez's conduct did not violate this rule simply because the Foundation board members commonly engaged in such behavior, and therefore the gestures would not have been perceived as offensive to someone in those circumstances. As the district court aptly noted, personnel rules "should not be defined by inappropriate workplace culture," but instead they "should be enforceable to change that culture." To accept Mr. Gutierrez's position would strip the rule of this function, contravening the DSD's clear intent in enacting it. See San Antonio, Los Pinos & Conejos River Acequia Pres. Ass'n v. Special Improvement Dist. No. 1, 2015 CO 52, ¶ 25, 351 P.3d 1112 ("Our duty in interpreting any statutory provision is to effectuate the General Assembly's intent in enacting it."); cf. Williams v. Gen. Motors Corp ., 187 F.3d 553, 564 (6th Cir. 1999) (rejecting argument that allegedly hostile work environment should be evaluated based on its internal culture as "illogical" because, under that analysis, the more pervasive the inappropriate conduct, the more difficult it would be to bring a claim).
¶ 19 Accordingly, because we reject the view that the standard for sexual harassment varies depending on the work environment, see Williams, 187 F.3d at 564, we conclude that the hearing officer's and the Board's analysis could not properly turn on the pervasiveness of objectively offensive conduct, such as "sexual banter" and crude jokes. Considering the totality of the circumstances does not permit lowering the standard of objectively reasonable behavior. Id. (explaining that a court should consider the totality of circumstances in evaluating a hostile work environment claim, but rejecting argument that crude or offensive behavior may be acceptable in work environments where it is common). Therefore, the Board abused its discretion when it applied a subjective standard to determine that Mr. Gutierrez did not violate DO 200.15. We remand to the district court to, in turn, remand to the Board to apply the correct standard to determine whether Mr. Gutierrez violated the rule.
IV. DO 300.10
¶ 20 DO 300.10 states that "Deputy Sheriffs and employees shall not indulge in immoral, indecent or disorderly conduct that would impair their orderly performance of duties or cause the public to lose confidence in the Department." Here again, the hearing officer found that Mr. Gutierrez did not violate this order because his conduct was not "immoral, indecent, or disorderly" in light of the culture of the Foundation's board. Further, the hearing officer concluded that there was no evidence that Mr. Gutierrez's conduct impaired the performance of anyone's duties. The Board affirmed these findings.
¶ 21 The district court determined that the hearing officer and the Board erred as a matter of law in requiring the conduct to actually impair the performance of duties because the plain language of the order requires only that the conduct "would" impair performance. Mr. Gutierrez does not challenge this part of the district court's finding. He does, however, contend that the hearing officer correctly analyzed his conduct by the standards of the Foundation board members. Again, we disagree.
¶ 22 The hearing officer, relying on Black's Law Dictionary (5th ed. 1979), defined "immoral conduct" as conduct that "shows moral indifference to opinions of the good and respectable members of the community." He then considered the culture of the Foundation board and concluded that Mr. Gutierrez's conduct was condoned by the board members and thus not immoral. In doing so, however, the hearing officer ignored the opinions of several deputies who testified that that they found Mr. Gutierrez's conduct offensive. Moreover, as discussed above, we will not abide a construction of a rule which sanctions inappropriate conduct merely because it is widespread.
*658 ¶ 23 By evaluating his behavior by the standards of this culture, the Board abused its discretion in finding that Mr. Gutierrez did not violate DO 300.10. We remand to the district court to, in turn, remand to the Board to determine whether he objectively violated the rule.
V. DO 2420.1B
¶ 24 The DSD's sexual harassment policy is contained in DO 2420.1B. The order "asserts zero tolerance and strictly prohibits harassment in and outside of the workplace." DO 2420.1B(2). Subsection 4 provides four different definitions of harassment, and subsection 5 lists ten examples of conduct that would be considered harassment under the policy, specifying that the list is "not inclusive of all types of harassment."
¶ 25 The hearing officer determined that Mr. Gutierrez did not violate the DSD's sexual harassment policy because his behavior on August 26 did not meet any of the definitions of harassment found in subsection 4 of the policy. Despite this finding, the hearing officer determined that Mr. Gutierrez's conduct constituted "behavior that could be observed as offensive by a third party," which is an example of harassment found in subsection 5(J). DO 2420.1B(5)(J).
¶ 26 The district court agreed that Mr. Gutierrez had violated the DSD policy in this way, but it also found that his conduct amounted to "[s]ubtle pressure for sexual activity" and "[d]emands for sexual favors," both of which are enumerated examples of sexual harassment in subsection 5 of the policy. DO 2420.1B(5)(C) & (G).
¶ 27 Mr. Gutierrez does not dispute the finding that his conduct was consistent with the examples of harassment in subsections 5(J) and 5(C), or that, as a result, he violated the sexual harassment policy. But because the severity of his discipline is determined by the severity of the violation, Mr. Gutierrez challenges the district court's finding that he demanded sexual favors from Ms. Arabalo. Thus, as Mr. Gutierrez concedes that he violated the sexual harassment policy, we consider only whether his conduct was a demand for sexual favors. We agree with Mr. Gutierrez that it was not.
¶ 28 According to the plain and ordinary meaning of the term, "demand" indicates that a request was made with force and authority. See Webster's Third New International Dictionary Unabridged 598 (2002) (defining "demand" as "to ask or call for with force or authority and with expectation of compliance"). No evidence establishes that Mr. Gutierrez's gestures were forceful or authoritative. While Mr. Gutierrez concedes that his conduct exerted subtle pressure for sexual activity, there is no indication that Mr. Gutierrez demanded anything from Ms. Arabalo.
¶ 29 Though Mr. Gutierrez's behavior was improper under DSD's rules, we will not construe it to be more than what it was. We accept the hearing officer's determination that this behavior was a crude joke, or "sexual banter." The conduct violated the sexual harassment policy because it was an offensive joke which subtly pressured Ms. Arabalo to participate in sexual activity, but it was not a demand for sexual favors.
VI. Remand
¶ 30 Like the district court, we are not in a position to determine the appropriate length of any suspension of Mr. Gutierrez, as the record contains no guidance on this subject, and the hearing officer determined that Mr. Gutierrez did not violate other personnel rules that are not at issue in this appeal. "Once a court finds that an administrative body has abused its discretion, how to address that deficiency on remand is within the discretion of the administrative body." Wolf Creek Ski Corp. v. Bd. of Cty. Comm'rs, 170 P.3d 821, 831 (Colo.App. 2007). We remand to the district court to further remand to the Board so it may reconsider the appropriate disciplinary action in light of this opinion.
VII. Conclusion
¶ 31 The order of the district court is affirmed in part and reversed in part, and the case is remanded to the district court to further remand to the Board in order to *659 determine the appropriate disciplinary action.
JUDGE TAUBMAN and JUDGE J. JONES concur.